## Cole's Adm'r v. Cole's Adm'r et al.

February 20, 1951.

Noel F. Harper, Special Judge.

Wilson & Wilson for appellant.

Paul Greer, Terry L. Hatchett for appellees.

JUDGE HELM—Affirming.

Theodore Cole, referred to in the record as Dore, and his wife, Mary Willie Collins Cole, referred to as May, "substantial" colored people, lived in a two-story frame home on their 83-acre farm in the southwest part of Barren County. On the night of October 7, 1948, the home burned and May lost her life in the fire. On October 11, 1948, Dore committed suicide by shooting himself with a shotgun.

This action is prosecuted by the administrator of the estate of Mary Willie Collins Cole against the administrator of the estate of Theodore Cole, alleging that "Theodore Cole * * * wrongfully brought about the death of Mary Willie Collins Cole," thereby damaging her estate in the sum of $20,000. At a trial before a jury, the Special Judge, at the close of the testimony, directed a verdict for appellee, defendant below. Appellant is here maintaining that the court erred in directing a verdict for appellee.

Dore and May had been married about 22 years. They had no children. Frank Payne, a witness for appellant, lived about 500 yards from the Cole home. He, Dore and Veachel Richey were fox hunting the night of the fire. They each returned to their homes about 11 p. m. Payne says, "about one a. m. the light shining in the window waked me up." He saw that the Cole house was "burning up." He put on his clothes and went over there. Payne found Dore outside the rapidly burning house; he "just had on underwear." Dore was going up to the windows around the house looking for his wife; he was excited. Dore asked Payne if May was at his house. When Payne said she was not, Dore told him about dragging May to the back door; said, "the door was contrary about undoing sometimes, he had grabbed her in the bed, he had got her around the neck and under this arm and drug her to the back door, said he didn't know whether she was awake or still asleep, said him scared and trying to get this door undone, and the place caving in, he turned her loose to take his other hand to

get this door undone, and about the time he got it undone, she said 'I can't go out there without a dress on, I have got to get me a dress,' said that was the last words he ever heard her say. He got the door undone about that time and run out into the well porch and then out the end door, * * * said, like anybody would, he was walking around the house looking at the fire, said he went around some three or four times, said he noticed he didn't see May no where, then he began to call her, * * * couldn't raise her, and so he goes out to Mr. Richey's on the hunt of her, and she wasn't out there, then he come back, and it wasn't so long until I come, and he asked me if May was at my house, and I told him, 'No, I haven't seen her,' and he said, 'Lordy mercy, she is in there burning up,' * * *.'' Whit Beckham, who heard Dore ''hollering,'' went to the Cole home. He says, ''When I walked up, Dore was between the garage and the corner of the house down on the ground, just rolling and hollering, 'Lord have mercy, * * *' and I walked up and said, 'Dore, what is the matter?' and he jumped up and said, 'Everything I got is burning up, and I don't know where the old lady is. I got her to the door and I don't know whether she went back or come out,' and I said, 'Maybe she went up to Mr. Richey's,' and he said, 'No, I have been up there, and she wasn't up there.' ''

The Cole house was ''weather boarded'' and ''ceiled inside.'' It had four rooms on the first floor, with a front and back porch, and had an upstairs. One of the front rooms was a bedroom; behind it was the kitchen; the other back room was the dining room, the northeast room. During the course of the fire an electric refrigerator, located in the southeast corner of the dining room next to the outside wall and front room, exploded, making a noise ''about like dynamite.'' When the house had almost completely burned, Dore discovered the burned body of his wife just under the outside window of the dining room.

The door of the refrigerator was blown off of its hinges—was blown several feet across the room. When May was found, the charred remains of a part of one leg was under the refrigerator door and one over it. The body was face down. Some ''buttons off her dress, three buttons in a row, and a belt buckle'' were lying near the body.

The witnesses, including the coroner who was called, describe the body. After the house had fallen in, the body was lying in the embers. All the flesh was burned from the body, and the bones were charred. The top of her head was "burned white, like chalk." The front part of the face and skull was gone. There was a hole in the back top part of the skull about the size of a dollar. The coroner and witnesses did not notice any other caved in or cracked places, just "the nicked skull," looked like "it had been bored in there with an auger or something." The bones were placed in a tub and removed by the undertaker. No one made a careful examination of the body. No autopsy was had.

It appears that Dore and his wife were well thought of by their neighbors, both white and colored, a number of whom testified.

After the fire was over, Payne found the metal portion of a shotgun in the ashes of what had been the bedroom. The metal part of a shell was in the barrel of the gun. Payne says, "I am most sure it wasn't snapped on."

The testimony of an insurance agent, who had conducted an investigation sometime after the fire, was that his company had two policies on the life of Dore; that later Dore took out a policy on May for $500 natural death, $1000 for accidental death, with Dore as beneficiary. The record does not disclose whether or not May knew about the policy.

May's relatives testified as to marital difficulties between Dore and May; that in the summer of 1948 the parties had agreed to a settlement of property rights and to the bringing of divorce action, but they had later become reconciled and no divorce action had been filed.

After the fire, Dore's truck was near the garden with the switch key in the truck. Dore said, " 'I have always made it a rule since I got this new truck, if I wasn't going but ten feet from it, to take the keys out. Today I left my keys in that truck for the first time. I don't know what made me do it.' " In the eary morning after the fire the neighbors sent to a store and bought a shirt, trousers, socks and shoes for Dore, as he was dressed only in underwear. After he put on the trousers he felt in his pockets and said, " 'This is the

first time in my life I have been without a penny in my pockets,' " and added, " 'over $200 burned up in there besides all my other things and my wife.' "

Dr. Paul York, who had not made an examination of the body, was called by appellant. He was asked questions embracing the facts of the record, including the fact that the house had burned with the body in it, had fallen in, and the body was found among the embers on the ground, face down, with a hole in the back top part of the skull. Asked if there was any way of telling what happened to the skull, he answered that there wasn't, unless there had been an examination by a trained man at the time. The evidence of Dr. Rex Hayes, called by appellant, was not any more satisfactory.

In his brief, appellant sets out fully the law applicable to directed verdicts. It is urged that the evidence was sufficient to take the case to the jury. In the brief it is said, "The test is whether or not *any* evidence has been submitted sufficient to sustain the cause of action." The scintilla rule has been abandoned in this state. Nugent v. Nugent's Ex'r., 281 Ky. 263, 135 S.W.2d 877.

We have made a careful examination of all of the record. We do not find any evidence of substance in the record upon which a verdict could be based. In our opinion, the cause of May Cole's death, and the origin of the fire which destroyed the Cole home, is a matter of conjecture and speculation. It follows that the trial court properly directed a verdict for appellee.

The judgment is affirmed.